PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CAPITAL EQUITY GROUP, | ) | |
| | ) | CASE NO. 1:16CV1953 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| | ) | |
| RIPKEN SPORTS INC., *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** |

Pending is the Rule 12(b)(6) motion to dismiss filed by Defendants Ripken Sports Inc., Sports Fields Inc., and Sports Force Parks Sandusky LLC (collectively "Defendants"). ECF No. 12. Plaintiff opposes. ECF No. 28. Defendants replied. ECF No. 37. The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. For the reasons set forth below, Defendants' motion is granted.

## I. Background

Plaintiff Capital Equity Group ("CEG") is in the business of raising equity capital for real estate and business development. ECF No. 1 ¶ 1. Defendants Sports Fields Inc. ("SFI")[1] and Sports Force Parks Sandusky LLC ("Sports Force") are in the business of developing and operating sports complexes throughout the United States. *Id.* at ¶ 2. Plaintiff and Defendants became partners in the development of Sports Force Parks at Cedar Point Sports Center (the

---

[1] Defendant Ripken Sports Inc. ("Ripken") is a d/b/a of SFI. ECF No. 1 ¶ 3; ECF No. 13 at PageID #: 134; ECF No. 13-1.

"Sports Center")—a youth tournament baseball complex and sports park in the City of Sandusky, Erie County, Ohio.[2]  *Id.* at ¶¶ 11, 29.  *See also* ECF No. 13 at PageID #: 134-35; ECF No. 28 at PageID #: 255.  Although the exact start of this pairing cannot be clearly gleaned from the pleadings[3], over the course of their nineteen-month business development relationship the parties split certain roles and tasks.  ECF No. 1 ¶ 20.

Plaintiff's role in the business development relationship was to focus on developing and procuring financing for the Sports Center by, among other things: bringing major partners to the deal, including non-parties Cedar Point Park, LLC ("Cedar Point"), and the Erie County and City of Sandusky governments; working with governmental bodies and joint venture partners to obtain bond financing; and, coordinating the logistics of securing approximately $20,000,000.00 in financing for the Sports Center from private and public funding sources.  ECF No. 1 ¶¶ 15-16, 20, 22-25; ECF No. 13 at PageID #: 135; ECF No. 28 at PageID #: 256.  In this role, Plaintiff worked with Erie County and non-party Cedar Point to structure, negotiate, draft and execute a Cooperative Agreement (ECF No. 1-4) that memorialized the financing terms for the Sports Center.  ECF No. 1 ¶¶ 20, 22-23; ECF No. 13 at PageID #: 135; ECF No. 28 at PageID #: 256.

---

[2] *See* Sports Force Parks at Cedar Point Sports Center, https://www.cedarpoint.com/play/cedar-point-sports-center (last visited Sept. 8, 2017)

[3] On the one hand Plaintiff alleges that it was invited to commence and commenced due diligence on financing and development of the Sports Park in November 2011.  ECF No. 1 ¶¶ 11-12.  But Plaintiff does not reveal whom extended the invitation.  On the other hand, Plaintiff states that it "solely sponsored" the development of the Sports Park until June 2013 when Plaintiff "invited [Defendants] to participate . . . as the operator and builder. . . as early as 2011."  ECF No. 28 at PageID #: 255.  *See also* ECF No. 1 ¶ 13.

(1:16CV1953)

Defendants' role in the business development relationship was to focus on the development, design, and operations plans for the Sports Center by, among other things: providing feasibility and market analysis; leading the design and construction; and, operating the Sports Center once it is constructed. ECF No. 1 ¶ 22; ECF No. 13 at PageID #135. In this role, Defendants worked with non-party Cedar Point to structure, negotiate, draft and execute a Development and Operations Agreement (ECF No. 1-3) between Defendant SFI and non-party Cedar Point. *See* ECF No. 1 ¶¶ 22, 24; ECF No. 28 at PageID #: 256.

To document this split-role arrangement, the parties agreed to certain terms of engagement that were memorialized in two (2) letters of intent—the 2013 Letter of Intent (the "2013 LOI") (ECF No. 1-2) and the 2014 Binding Letter of Intent (the "2014 LOI") (ECF No. 1-1). *See* ECF No. 1 ¶¶ 14, 23; ECF No. 13 at PageID #: 133-34. As a result of Plaintiff's effort to secure financing for the Sports Center pursuant to the letters of intent, the Cooperative Agreement (ECF No. 1-4) between non-parties Cedar Park and Erie County was executed on or about October 26, 2015 and went into effect on October 1, 2015. ECF No. 1 ¶ 25. Thereafter, Plaintiff alleges communication with Defendants ceased. *Id.* at ¶ 26. Approximately six (6) months later, on April 25, 2016, a local news media outlet published an article stating that Defendant Sports Force entered into a "a new venture" with non-parties Cedar Point and Erie County to open the Sports Center. *Id.* at ¶ 30. The Sports Center opened to the public in March 2017 hosting "high school lacrosse games, an adult softball tournament, soccer tournaments and

(1:16CV1953)

a baseball tournament."[4] Plaintiff has not received any share of the profits or any payment of fees for its role in the business development relationship with Defendants. ECF No. 28 at PageID #: 257.

Plaintiff filed this action prior to the Sports Center opening to the public. The Complaint (ECF No. 1) alleges claims for breach of contract ("Count One") and bad faith ("Count Two").[5] ECF No. 1. Plaintiff alleges that the 2013 LOI and 2014 LOI were binding agreements under which Plaintiff held an exclusive right to provide equity financing for the Sports Center. ECF No. 1 at ¶¶ 11, 29. *See also* ECF No. 28 at PageID #: 255. Plaintiff also alleges that the financial forecasts prepared by Defendants "induced [Plaintiff] to continue devoting substantial time and effort to consummate the [Sports Center]." ECF No. 1 ¶ 21. Plaintiff contends that Defendants breached the alleged binding agreements and acted in bad faith when Plaintiff was ultimately "cut out of the [final] deal" between Defendants and non-parties Cedar Point and Erie County to develop the Sports Center, and was "denied its right to exclusively raise the equity participation" for the Sports Center. *Id.* at ¶ 30.

As to Counts One and Two, Plaintiff seeks $4,434,235.00 in damages as to each count. *Id.* at ¶¶ 33, 37. In addition, Plaintiff seeks preliminary and permanent injunction enjoining Defendants from, among other things, "financing, developing, building and/or operating" Sports

---

[4] *See* Edward Pevos, *An inside look at Cedar Point's new Sports Force Parks*, MLive.com (May 2, 2017), http://www.mlive.com/travel/index.ssf/2017/05/an_inside_look_at_cedar_points.html.

[5] Although Plaintiff brings a five-count Complaint, Counts Three, Four, and Five are remedies sought by Plaintiff in this action.

4

(1:16CV1953)

Force Parks at Cedar Point Sports Center without Plaintiff ("Count Three") (*Id.* at ¶¶ 38-44); an order appointing a receiver over Defendants pursuant to Ohio Rev. Code § 2735.01 ("Count Four") (*Id.* at ¶¶ 45-46); and, an order requiring Defendants to "immediately furnish a full accounting of all matters . . . relating to" the Sports Center], the 2013 LOI, and/or the 2014 LOI ("Count Five") (*Id.* at ¶¶ 47-50).

Defendants filed a 12(b)(6) motion to dismiss the Complaint. ECF No. 12. Plaintiff opposes (ECF No. 28); a reply (ECF No. 37) was filed.

## II. Legal Standard

To survive a Fed. R. Civ. P.12(b)(6) motion to dismiss, the plaintiff's complaint must allege enough facts to "raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Fed. R. Civ. P. 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint requires "further factual enhancement," which "state[s] a claim to relief that is plausible on its face." *Id.* at 557, 570. A claim has facial plausibility when there is enough factual content present to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

(1:16CV1953)

When a claim lacks "plausibility in th[e] complaint," that cause of action fails to state a claim upon which relief can be granted. *Twombly*, U.S. 550 at 564.

The Court's inquiry is limited to the four corners of the complaint, along with any other materials permitted under Fed. R. Civ. P. 12(b)(6) and 10(c). *Jackson v. Maui Sands Resort, Inc.*, No. 1:08-CV-2972, 2009 WL 7732251, at *3 (N.D. Ohio Sept. 8, 2009). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). A court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### III. Analysis

**A. Count One**

To establish a claim for breach of contract pursuant to Ohio law, a plaintiff must establish the existence of a contract, performance by the plaintiff, the defendant's failure to fulfill its contractual obligations, and damages as a result of the breach. *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 957 (Ohio Ct. App. 2004)). Defendants move to dismiss Count One on two grounds. As a threshold issue, Defendants move to dismiss Count One on grounds that Plaintiff has not met the first element of a breach of contract claim—the existence of a contract or agreement. ECF No. 13 at PageID #: 137-40. Next, Defendants move to dismiss Count One on grounds that, even if the 2013 and 2014 LOI's are enforceable as contracts, Plaintiff did not

6

(1:16CV1953)

factually allege the third element of a breach of contract claim—that Defendants failed to fulfill their contractual obligations. *Id.* at PageID #: 140-41. The Court considers Defendants' arguments below.

**(1) 2013 LOI**

Plaintiff claims that the 2013 LOI (ECF No. 1-2) was a "binding contract" between the parties. ECF No. 1 ¶¶ 14, 31-33; ECF No. 28 at PageID #: 261. Defendants contend that Count One should be dismissed because the 2013 LOI is a non-binding agreement-to-agree that "anticipated a future, formal agreement between the parties, specifically stating that its provisions would not become binding '[u]ntil such time as the parties sign a formal letter of agreement.'" ECF No. 13 at PageID #: 137-38. In its opposition, Plaintiff advances arguments and case law relevant to agreements-to-agree, appearing to concede that the 2013 LOI is an agreement-to-agree. ECF No. 28 at PageID #: 259.

 "Although 'an agreement to make an agreement is [not] per se unenforceable ... [t]he enforceability of such an agreement depends . . . on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced.'" *InhalIntentionation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, 638 F. App'x 489, 498 (6th Cir. 2016) (quoting *M.J. DiCorpo, Inc. v. Sweeney*, 634 N.E.2d 203, 208 (Ohio 1994)). Therefore, the issue before the Court is whether (1) the parties have manifested an intent to be bound by the terms of the 2013 LOI, and (2) whether the parties' intent to be bound by the terms of the 2013 LOI are sufficiently definite to be specifically enforced.

When a letter of intent forms the bases for an agreement-to-agree, the parties do not manifest an intent to be bound by the terms of the agreement if "the express terms of the letter of intent clearly indicate that the document was nothing more than an agreement to principles which were subject to further negotiation and [a] detailed and definitive [future] agreement [, and] the letter itself [does] not address all the essential terms of the [future agreement]." *M.J. DiCorpo*, 634 N.E.2d at 208 (holding that letter of intent did not constitute a binding merger agreement). *See also* *Faurecia Auto. Seating, Inc. v. Toledo Tool & Die Co.*, 579 F. Supp. 2d 967, 972 (N.D. Ohio 2008) (Carr, J.) ("In the Sixth Circuit, 'if [an] obligation, in order to become binding, rests on a future agreement to be reached by parties, so that either party may refuse to agree, there is no contract.'" ) (quoting *General Motors Corp. v. Keener Motors*, 194 F.2d 669, 676 (6th Cir. 1952)).

The introductory paragraph of the 2013 LOI provides:

> This letter is intended to set forth the **intent of a future partnership** between Capital Equity Group ("CEG") and Ripken Sports ("RS") whereas RS and CEG intend to work together to help develop a sports complex in Erie County, OH. This Letter of Intent contains provisions that are **binding and non-binding when signed by the parties**. **Until such time as the parties sign a formal letter of agreement** will the services or business entities herein mentioned entirely become binding on the parties.

*See also* ECF No. 1-2 (emphasis added).

Defendants contend that the parties did not manifest an intent to be bound by the terms of the 2013 LOI because the 2013 LOI "anticipated a future, formal agreement between the parties, specifically stating that its provisions would not become binding '[u]ntil such time as the parties

8

(1:16CV1953)

sign a formal letter of agreement.'" ECF No. 13 at PageID #: 137-38. Plaintiff contends that the parties manifested an intent to be bound by the terms of the 2013 LOI because the introductory paragraph states, in part, that it contains both "binding and non-binding" provisions. ECF No. 28 at PageID #: 260. However, neither Plaintiff nor 2013 LOI reveal which terms were binding and which were not.[6] Additionally, the ending of the sentence on which Plaintiff's assertion relies, conditions the "binding and non-binding" provisions on the 2013 LOI being "signed by the parties." ECF No. 1-2. The 2013 LOI is only signed by Jim Arnold (a.k.a. James S. Arnold), Defendant SFI d/b/a Ripken Sports, Inc.'s Director of Business Development. ECF No. 1-2; ECF No. 13 at PageID #134. Therefore, on its face, the express terms of the 2013 LOI clearly indicate that its terms were not binding on the parties until both parties sign the 2013 LOI—a condition not met. In the alternative, the express terms of the 2013 LOI also indicate that the terms shall be binding when the parties sign a formal letter of agreement in the future. Such a contingency means there is no contract. *See* General Motors Corp., 194 F.2d at 676 ("If the obligation to become binding rests on a future agreement to be reached by the parties, so that either party may refuse to agree, there is no contract. In other words: As long as both parties contemplate that something remains to be done to establish contractual relationship, no contract has been made.").

Having found that the parties have not manifested an intent to be bound by the terms of the 2013 LOI, the Court finds that the 2013 LOI is not a binding contract. Because the 2013 LOI is not a binding contract, the Court need not decide whether the parties' intentions to be bound by

---

[6] While not insignificant, as indicated below, the Court's ruling makes giving this vagueness additional treatment unnecessary.

9

(1:16CV1953)

the terms of the 2013 LOI are sufficiently definite to be specifically enforced. To the extent Plaintiff's claims rely on the enforceability of the 2013 LOI, the claims are dismissed.

**(2) 2014 LOI**

Plaintiff claims that the 2014 LOI (ECF No. 1-1) is a "binding contract" between the parties. ECF No. 1 ¶¶ 18, 31-33; ECF No. 28 at PageID #: 261. Unlike the 2013 LOI, the 2014 LOI is unambiguously labeled a "BINDING LETTER OF INTENT." *See* ECF No. 1-1 at PageID #: 18 ("THIS BINDING LETTER OF INTENT ("Agreement") . . ." ). The 2014 LOI provides:

> WHEREAS, while it is anticipated that the Parties will ultimately enter into a more formal and detailed agreement, it is the Parties' desire to set forth a binding contractual framework for their agreement with one another as it relates to the Project and any other project resulting from a Party and the other's Contact. **Regardless of whether a more formal document is ever agreed upon and executed, this Agreement shall be treated as a binding contract.**"

ECF No. 1-1 at PageID #: 18 (emphasis added).

Here, the express terms of the 2014 LOI are clear and unambiguous as to the parties' intent to be bound and sufficiently definite to be enforceable. *See Inhalation Plastics*, 638 F. App'x at 498. Moreover, Defendants concede that, on its face, "the [2014 LOI] states that the parties desired to set forth a 'binding contractual framework' that would survive even if they did not enter into a formal contract." ECF No. 13 at PageID #: 138. The 2014 LOI was signed by Plaintiff and James S. Arnold (a.k.a. Jim Arnold), Defendant SFI d/b/a Ripken Sports, Inc.'s Director of Business Development. ECF No. 1-1 at PageID #: 21; ECF No. 13 at PageID #134.

(1:16CV1953)

Nevertheless, Defendants argue that Count One should be dismissed (as to the 2014 LOI as well) because the terms of the 2014 LOI are too indefinite and vague to be enforced. ECF No. 13 at PageID #: 138-40.

> While the parties need not agree on every conceivable circumstance that might arise in order for a contract to exist, they must agree on the contract's essential terms. [ ] Thus, a valid contract must be specific as to its essential terms. [ ]In a contract that is not for goods, the essential terms are, generally, the parties to the contract and its subject matter. . . . An agreement is sufficiently certain for enforcement if it provides a basis for determining the existence of a breach and for giving an appropriate remedy.

*In re Estate of Bohl*, 60 N.E.3d 511, 520 (Ohio 2016) (citations and quotations omitted). Essentially, a valid contract must be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term. It is well settled under Ohio law that if the Court determines that the parties intended to be bound by an agreement that falls short, the Court "may fashion those less essential terms that were omitted to reach a fair and just result." *Mantia v. House*, 900 N.E.2d 641, 644 (Ohio Ct. App. 2008) (quoting *Litsinger Sign Co. v. Am. Sign Co., Inc.*, 227 N.E.2d 609, 619 (Ohio 1967)).

Defendants argue a litany of reasons why the terms of the 2014 LOI are not sufficiently definite or certain. Among their arguments, Defendants aver that the 2014 LOI "identifies no definitive duties that the parties owe to one another related to financing, developing, or operating the project." ECF No. 13 at PageID #: 139. Defendants also assert that the 2014 LOI lacks financial terms, deadlines, timetables, metrics for compliance, and consequences for noncompliance. *Id.* at PageID #: 140. In addition, Defendants assert that the 2014 LOI lacks

11

(1:16CV1953)

"definite terms allowing a factfinder to determine whether a breach has occurred [and] the proper remedy for an alleged breach." *Id.* at PageID #: 139.

Plaintiffs retort on grounds that the 2014 LOI contains sufficiently definite terms detailing the parties roles, the term length, the exclusivity of the partnership, confidentiality, applicable law, and agency authority. *See* ECF No. 28 at PageID # 261. Plaintiff also avers that the 2014 LOI contained sufficiently definite financial terms because the 2014 LOI gave Plaintiff exclusive right to finance the project. *Id.* at PageID #: 262. *See also* ECF No. 1-1, ¶1.a. ("CEG shall exclusively procure all equity participation[.]"). Plaintiff contends that, separate from the 2014 LOI, the parties forecasted that this exclusive equity participation would generate $4.44 million in profits for Plaintiff over ten (10) years. ECF No. 28 at PageID #: 262. *See also* ECF No. 1 ¶ 21 (alleging that Defendants prepared financial forecasts indicating a roughly $4.4 million total return on capital investment and fees).

The 2014 LOI sufficiently identifies the names of the parties to the agreement, their roles, and its subject matter. Defendants agree "the 2014 Letter of Intent contemplates that [Plaintiff] would have the right to provide equity financing, and Defendants would not." ECF No. 37, PageID # 438. The 2014 LOI reveals that the parties agreed to that "Plaintiff shall exclusively procure all equity participation into the Project." *See* ECF No. 1-1 at ¶1.a. Unfortunately for Plaintiff, while it appears to have been given responsibility for financing the project, the 2014 LOI is not sufficiently certain for enforcement because it does not provide a basis for giving an appropriate remedy. While Plaintiff contends that, its exclusive equity participation under the 2014 LOI would result in a $4.44 million profit over ten (10) years, Plaintiff does not point the

12

Court to any provision in the 2014 LOI that either expressly or impliedly guarantees Plaintiff a monetary benefit from the 2014 LOI. Method of determining an amount of compensation are glaring omissions of essential terms the Court cannot fashion.[7]

Accordingly, the Court finds the 2014 LOI unenforceable. To the extent Plaintiff's claims rely on the enforceability of the 2014 LOI, the claims are dismissed. Consequently, Plaintiff's claims for breach of contract are also dismissed. Plaintiff fails to state a claim upon which relief may be granted in the absence of an enforceable contract or agreement between the parties in this action.

**B. Count Two**

Count Two alleges that Defendants' conduct breached the "implied covenants of good faith and fair dealing pursuant to [Ohio Rev. Code] § 1301.304." ECF No. 1 ¶¶ 34-37. Defendants move to dismiss Count Two on grounds that, under Ohio law, a claim for breach of implied covenant of good faith and fair dealing is not an independent cause of action. ECF No. 13 at PageID #: 142-43. Defendants also contend that Ohio law only recognizes an implied covenant of good faith and fair dealing in insurance contracts. *See* ECF No. 37 at PageID #: 444.

---

[7] Defendants' summary of their argument on this issue bears repeating: "even if Defendants agreed that [Plaintiff] would have the 'exclusive' right to provide equity financing for the project, [Plaintiff] later chose to give away the exclusivity of that right, without any involvement from Defendants." ECF No. 37, PageID # 439. When the Complaint is viewed in the light mos favorable to Plaintiff, it supports Defendants' position. Plaintiff's argument that this is Defendants' attempt to modify the 2014 LOI misses the mark. Either the 2014 LOI failed to provide terms specifying the compensation, price, or remedy Plaintiff seeks, or Plaintiff contracted away its expectation of payment when it negotiated the Cooperative Agreement.

(1:16CV1953)

"Ohio law only recognizes an implied covenant of good faith and fair dealing in insurance contracts and in limited circumstances where the duty arises from the language of the contract." *Pappas v. Ippolito*, 895 N.E.2d 610, 622 (Ohio Ct. App. 2008). The matter at bar does not concern an insurance contract. Moreover, because the Court has ruled that there is no enforceable contract in this action, the duty of good faith and fair dealing does not arise from the language of any contract in this case. Accordingly, Count Two is dismissed.

**C. Counts Three - Five**

Defendants move to dismiss Counts Three through Five on grounds that a preliminary injunction, the appointment of a receiver, and an accounting are remedies and not independent causes of action. ECF No. 13 at PageID #: 143. Having found that there is no contract or agreement to enforce in this action, the Court dismisses Counts Three, Four and Five on grounds that these claims constitute request for remedies, without viable underlying causes of action, Plaintiff fails to state a claim upon which relief may be granted in the absence of an enforceable contract or agreement between the parties.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 12) is granted. This matter is dismissed with prejudice.

IT IS SO ORDERED.

| | |
|---|---|
| September 19, 2017 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |

14